1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11   JAMES AND ELIZABETH CONSOLE            Case No.:  23-cv-652-DMS-BLM
     FAMILY,
12                                          **ORDER GRANTING DEFENDANT'S**
                                Plaintiffs,  **MOTION TO DISMISS**
13
     v.
14
     UNITED STATES,
15
                                Defendant.
16

17

18          Pending before the Court is Defendant United States of America's ("Defendant")

19   motion to dismiss Plaintiffs James and Elizabeth Console's ("Plaintiffs") Complaint for

20   lack of subject matter jurisdiction and failure to state a claim under Rules 12(b)(1) and

21   (b)(6), respectively, of the Federal Rules of Civil Procedure.  (ECF No. 6).  Plaintiffs

22   concurrently filed an opposition (ECF No. 10) and a First Amended Complaint (ECF No.

23   12) ("FAC"), Defendant filed a reply (ECF No. 16), and Plaintiffs thereafter filed both a

24   surreply (ECF No. 18) and supplemental memorandum (ECF No. 19).[1]  For the following

25   _____

26   [1] Defendant responded to Plaintiffs' FAC in its reply brief, (ECF No. 16), so the Court will address the
     FAC and treat it as the operative pleading.  In addition, although Plaintiffs' surreply and supplemental
27   memorandum are procedurally improper, Plaintiffs are proceeding pro se and Defendant did not object to

28

1

reasons, the Court finds it lacks subject matter jurisdiction and grants Defendant's motion to dismiss.[2]

# I.
# BACKGROUND

The genesis of Plaintiffs' complaint is an alleged "Ponzi-type" scheme which defrauded Plaintiffs out of their IRA retirement accounts. (FAC at 2–3.) The perpetrators of a number of these fraudulent schemes are Jacob Cooper ("Mr. Cooper"), Robert Stinson Jr. ("Mr. Stinson"), Anthony Mark Hartman ("Mr. Hartman"), Terrence Goggin ("Mr. Goggin"), and James Bramlette ("Mr. Bramlette"). These individuals have been embroiled in civil and criminal litigation for many years as a result of their business activities.[3] Plaintiffs have been unsuccessful in recovering their losses from these individuals and blame the United States in the present litigation for this failure. Plaintiffs allege the United States through various employees wrongfully delayed or declined to bring criminal charges against one or more of the alleged fraudsters, mishandled criminal cases that it did file, and failed to timely warn or share information with Plaintiffs about these fraudsters, thereby causing economic and emotional harm to Plaintiffs.

those filings. The Court therefore elects to consider both filings in the interests of justice and for efficiency purposes.

[2] The Court declines to reach Defendant's other arguments under Fed. R. Civ. P. 12(b)(6) (failure to state a claim) in light of the dismissal under Rule 12(b)(1).

[3] *See, e.g., SEC v. Bramlette, et al.*, No. 2:18-cv-761 (D. Utah 2018) (lawsuit against Mr. Cooper, Mr. Bramlette, and others, based on an alleged Ponzi scheme defrauding investors out of retirement savings); *People v. Jacob Keith Cooper*, No. SCD2711154 (S.D. Super. Ct. 2017) (state criminal case charging Mr. Cooper with conspiracy, misrepresentations of sale, and elder theft); *Kamian Schwartzman v. Jomac, LLC, et al.*, No. 2:10-cv-3130 (E.D. Pa. 2011) (lawsuit against Mr. Cooper and others to secure receivership property for the benefit of investors from the companies involved in the alleged Ponzi scheme); *United States v. Anthony Hartman*, No. 2:19-cr-347 (D.S.C. 2019) (federal criminal case charging Mr. Hartman with fraud); *United States v. James Bramlette*, No. 2:19-cr-347 (D.S.C. 2019) (federal criminal case charging Mr. Bramlette with fraud); *United States v. Terrence Goggin*, No. 4:18-cr-415 (N.D. Cal. 2018) (federal criminal case charging Mr. Goggin with fraud); *SEC v. Total Wealth Mgmt., Inc., et al.*, No. 15-cv-226 (S.D. Cal. 2015) (SEC lawsuit against Total Wealth Management "TWM" and Jacob Cooper for fraud); *Seaman v. Private Placement Capital Notes II, LLC*, No. 16-cv-578 (S.D. Cal. 2016) (lawsuit for fraud and breach of contract).

23-cv-652-DMS-BLM

1    Specifically, Plaintiffs allege that Mr. Cooper was their financial advisor at Total

2    Wealth Management ("TWM") beginning in 2011.  Plaintiffs allege that Cooper and his

3    co-conspirators targeted seniors and used their scheme to defraud victims out of their IRAs

4    and other retirement accounts.  Plaintiffs further allege that Cooper was involved in a

5    federal criminal case in Philadelphia in 2010, where he "had been bringing investor

6    money" to co-conspirator Stinson, who is "a felon and securities fraud recidivist."  (FAC

7    at 3–4.)  Plaintiffs allege Stinson was tried and sentenced in that case to 33 years as a

8    recidivist offender, and that all of this happened shortly before Plaintiffs moved their IRA

9    accounts over to Cooper in 2011.  (*Id.* at 4.)  Plaintiffs fault the government for allowing

10   Cooper to continue "operating a Ponzi-type scheme" when they knew he was complicit

11   with Stinson, which "left [Plaintiffs] vulnerable to his fraudulent conduct" in 2011 and

12   thereafter.  (*Id.* at 5.)  Plaintiffs further fault federal prosecutors for not bringing criminal

13   charges against Cooper, particularly since the SEC had filed a civil lawsuit and "shut

14   down" Cooper and TWM in 2015.  (*Id.*)  Finally, Plaintiffs attribute the same kind of

15   wrongdoing to the government with respect to Hartman, who allegedly defrauded investors

16   out of $34 million dollars and "who was also allowed by … Government employees to

17   continue his scheme to defraud until April 9th, 2019," when he was finally indicted some

18   "4 years after his crimes against [Plaintiffs] were discovered."  (*Id.* at 6.)  Plaintiffs allege

19   federal prosecutors excluded them from the criminal investigations and cases, and

20   ultimately allowed Hartman to plead to a reduced charge and enter Pretrial Diversion—a

21   program for which Plaintiffs argue Hartman was "not eligible."  (*Id.* at 7.)

22       Plaintiffs describe several instances of communication between themselves, the

23   SEC, various individuals within United States Attorneys' Offices ("USAO") in California

24   and South Carolina, the Department of Justice ("DOJ"), and the Federal Bureau of

25   Investigation ("FBI").  In an attempt to gather more information, Plaintiffs filed Freedom

26   of Information Act ("FOIA") requests, which were allegedly denied.  Plaintiffs also filed

27   an administrative complaint with DOJ outlining the same grievances, and a separate

28   administrative complaint with the FBI Sorrento Valley field office detailing concerns about

23-cv-652-DMS-BLM

possible government corruption.   After receiving no response from the government, Plaintiffs filed this suit.

## II.
## LEGAL STANDARD

A federal court is a court of limited jurisdiction and possesses "only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 535, 541 (1986). Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).   When ruling on such a motion, a court may consider extrinsic evidence beyond the face of the complaint.   *Wolfe v. Stankman*, 392 F.3d 358, 362 (9th Cir. 2004).   A challenge for lack of subject matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).   A federal court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction."   Fed. R. Civ. P. 12(h)(3).

## III.
## DISCUSSION

Claims brought against the United States sounding in tort are governed by the Federal Torts Claim Act ("FTCA"). *See* 28 U.S.C. § 2680.   The United States must consent to being sued through waiver of its immunity. *McGuire v. United States*, 550 F.3d 903, 910 (9th Cir. 2008) (stating "the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued.")   In the subject litigation, Plaintiffs' principal claim is for negligence under the FTCA. (*See, e.g.*, FAC at 11 ("The plaintiffs[] believe that the FTCA … is an appropriate remedy for the injuries sustained by the negligent actions of [Defendant's] employees."))   Defendant contends waiver of sovereign immunity under the FTCA is limited and subject to several exceptions, "including the discretionary function and misrepresentation exceptions, which apply here." (Def. Mot. at 4, ECF No. 6.)   The Court agrees.

**A. Discretionary Function Exception**

It is well-settled that the United States may not be sued for "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee." 28 U.S.C. § 2680(a). This exception applies to all government employees, including prosecutors in criminal cases. *See Gray v. Bell,* 712 F.2d 490, 513 (1983) (stating "prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception."). In addition, prosecutorial negligence in handling criminal cases, as Plaintiffs allege, is "irrelevant to the discretionary function inquiry." *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1029 (9th Cir. 1989). Instead, there is a two-step inquiry to determine whether the discretionary function exception applies. *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000).

First, "the court must determine whether the challenged conduct involves an element of judgment or choice" by the defendant. *Id.* at 1001 (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Second, if the "conduct involves some element of choice, the court must determine whether the conduct implements social, economic or political policy considerations." *Nurse*, 226 F.3d at 1001. "If the challenged action satisfies both of these two prongs, that action is immune from suit—and federal courts lack subject matter jurisdiction—even if the court thinks the government abused its discretion or made the wrong choice." *Green v. United States*, 630 F.3d 1245, 1249–50 (9th Cir. 2011). The "government bears the ultimate burden of establishing that the exception applies." *Id.* at 1248–49.

At step one the court must determine whether the challenged conduct involves an element of judgment or choice. *Nurse*, 226 F.3d at 1001 (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). "This inquiry looks at the 'nature of the conduct, rather than the status of the actor' and the discretionary element is not met where 'a federal statute,

1    regulation, or policy specifically prescribes a course of action for an employee to follow.'"

2    *Esquivel v. United States*, 21 F.4th 565, 573 (9th Cir. 2021) (quoting *Berkovitz*, 486 U.S.

3    at 536).  If a statute or policy requires certain action, the inquiry ends.  *Id.*

4            The challenged conduct here is the USAO (District of South Carolina) excluding

5    Plaintiffs as victims in Mr. Hartman's criminal case by indicting him on reduced charges,

6    offering Mr. Hartman pretrial diversion, and subsequently dismissing his case; the USAO

7    (Southern District of California) not being transparent about federal investigations,

8    including investigations into Mr. Cooper and electing not to charge him; and the USAO

9    (Northern District of California) offering Mr. Goggin a plea deal, which resulted in

10   Plaintiffs not being victims of the charged offense and unable to testify regarding

11   restitution.

12           Plaintiffs argue the Crime Victims' Rights Act ("CVRA"), Victims' Rights and

13   Restitution Act ("VRRA"), and Principles of Federal Prosecution provide "obligations

14   under state laws and federal mandates" that require certain action by government actors,

15   and thus, the discretionary element of step one is not met.  (Pls. Oppo. at 5, ECF No. 10.)

16   Initially, Plaintiffs argue the various decisions, or lack thereof, by government employees

17   run afoul of the Principles of Federal Prosecution published by DOJ in its Justice Manual

18   9-27.000 (2018).  Plaintiffs contend government actors and entities did not follow these

19   Principles.  However, the Principles of Federal Prosecution state they "are not intended to

20   create a substantive or procedural right or benefit, enforceable at law, and may not be relied

21   upon by a party to litigation with the United States."  *Id.* § 9-27.150.  Moreover, the

22   Principles state they are "intended solely for the *guidance* of attorneys for the government."

23   *Id.* § 9-27.150 (emphasis added).  As such, the Principles of Federal Prosecution do not

24   prescribe a course of action that removes discretion from prosecutors in handling criminal

25   cases.

26           Plaintiffs also attempt to use the CVRA and VRRA to rebut the government's

27   argument that the discretionary function exception applies.  The CVRA provides rights to

28   crime victims in federal proceedings.  *See* 18 U.S.C. § 3771(a).  It requires government

1   employees "engaged in the detection, investigation, and prosecution of crime" to "make
2   their best efforts" to see that crime victims are afforded the rights set forth in § 3771(a).
3   *Id.* § 3771(c)(1). It further provides the procedure in which a victim may be heard and
4   pursue recourse. *See id.* § 3771(d). However, the CVRA states it does not "imply any duty
5   or obligation to any victim or other person for the breach of which the United States or any
6   of its officers or employees could be held liable in damages[,]" *id.* §3771(d)(6), and that it
7   shall not "be construed to impair the prosecutorial discretion of the Attorney General or
8   any officer under his direction." *Id.* Similarly, the VRRA "does not create a cause of
9   action or defense in favor of any person arising out of the failure of a responsible person to
10  provide information." 34 U.S.C. § 20141(d). Thus, the CVRA and VVRA do not restrict
11  prosecutorial discretion and do not create any specific duty or obligation to victims for the
12  breach of which the United States could be held liable. Because the challenged conduct
13  here involves matters of prosecutorial discretion and judgment, and not conduct prescribed
14  by policy or statute, step one is met.[4]

15      At step two, the Court must determine whether the conduct at issue implicates social,
16  economic or political policy considerations. *Nurse*, 226 F.3d at 1001. The exception
17  protects government action premised on such considerations. *Esquivel*, 21 F.4th at 574.
18  "Where the government agent is exercising discretion, 'it must be presumed that the agent's
19  acts are grounded in policy when exercising that discretion.'" *Id.* (quoting *Gaubert*, 499
20  U.S. at 324).

---

22  [4] To the extent Plaintiffs are attempting to use the CVRA and VVRA as independent causes of action,
23  they are barred from doing so. Neither the CVRA nor the VVRA provides a private cause of action. *See*
    18 U.S.C. § 3771(d)(6) (stating "[n]othing in this chapter shall be construed to authorize a cause of action
24  for damages . . ."); 34 U.S.C. § 20141(d) (stating "[t]his section does not create a cause of action . . .").
    *See also In re Wild*, 994 F.3d 1244, 1256 (11th Cir. 2021) (stating Congress did not through the CVRA
25  "authorize crime victims to file stand-alone civil actions.") The same is true for Plaintiffs' attempted use
    of California's Marsy's Law, which provides crime victims certain rights. *See* Cal. Const. art. I, § 28(b).
26  Like the CVRA and VVRA, Marsy's Law "does not create any cause of action for compensation or
27  damages against" the government. *Id.* § 28(c)(2).

28

23-cv-652-DMS-BLM

"The investigation and prosecution of crime has long been a core responsibility of the executive branch." *Gonzalez v. United States*, 814 F.3d 1022, 1028 (9th Cir. 2016). "Courts have consistently held that where, as here, a government agent's performance of an obligation requires that agent to make judgment calls, the discretionary function exception applies." *Id.* at 1029. When "harm actually flows from the prosecutor's exercise of discretion, an attempt to recharacterize the action as something else must fail." *Gen. Dynamics Corp. v. United States*, 139 F.3d 1280, 1286 (9th Cir. 1998).

A prosecutor's investigation, charging decisions, plea bargaining, and evaluation of eligibility for a diversion program are all grounded in policy considerations. So too is the decision-making of the USAO and federal law enforcement agencies concerning when, and to whom, to disclose the existence of an investigation or proceeding. *See Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016, 1051 (C.D. Cal. 2010), *aff'd Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749 (9th Cir. 2013) (dismissing case because discretionary function exception barred investors' claims against SEC for its investigators' failure to discover Ponzi scheme and publicize or prosecute it).

Here, Plaintiffs' claims stem entirely from their dissatisfaction with the manner in which prosecutors exercised discretion. Plaintiffs claim their family was wrongfully excluded as victims in the criminal case against Mr. Hartman based on the types of charges filed, which prejudiced and harmed them. Plaintiffs assert that Mr. Hartman was afforded the opportunity to participate in a diversion program, for which he was not eligible. (*See Hartman*, 19-cr-347, at ECF Nos. 196, 199.)[5] Plaintiffs argue that "[w]ho knew and approved the decision to create a Diversion Program for Mr. Hartman … should be made available information." (*Id.* at 15-16.) Plaintiffs further note their discontent with Mr. Hartman's case being dismissed and believe it is "another example of the Government

---

[5] On July 12, 2023, the United States moved to dismiss the indictment against Mr. Hartman due to his successful participation in the pretrial diversion program. (*Id.* at ECF No. 234.) The district court granted the motion and dismissed the indictment without prejudice against Mr. Hartman on July 17, 2023. (*Id.* at ECF No. 235.)

1    Employees wrongdoing, [and] it has a direct impact on the Plaintiffs' as it will make finding

2    and collecting from the Defendant, Mr. Hartman, highly unlikely." (Pls. Supp. Mem. at 6,

3    ECF No. 19.)  However, as discussed, prosecutors have wide discretion in handling cases,

4    including determining the scope of investigation and whether, when, and the types of

5    charges, to file.  Prosecutorial discretion is defined as "[a] prosecutor's power to choose

6    from the options available in a criminal case, such as filing charges, prosecuting, not

7    prosecuting, plea-bargaining, and recommending a sentence to the court." *Prosecutorial*

8    *Discretion, Black's Law Dictionary* (10th ed. 2014).  "The decision of whether or not to

9    prosecute a given individual is a discretionary function for which the United States is

10   immune from liability." *Wright v. United States*, 719 F.2d 1032, 1035 (9th Cir. 1983). *See*

11   *also United States v. Nixon*, 418 U.S. 683, 693 (1974) (stating decision whether to

12   prosecute is discretionary and protected).  So, too, here.

13        And the same is true with Mr. Goggin.  Plaintiffs allege they were notified by the

14   DOJ Victims Notification System that they were victims of Mr. Goggin.  (FAC at 8.)

15   Plaintiffs had discussions with a Victim Witness Specialist in the U.S. Attorney's office

16   regarding the criminal case.  (*Id.*)  Plaintiff Elizabeth Console alleges she spoke with a

17   Victims' Rights Ombudsman ("VRO") at DOJ. (*Id.* at 9.)  Plaintiffs further allege the VRO

18   called the Northern District of California division of the USAO and confirmed that "the

19   charged offense removed our rights as victims." (*Id.*)  The VRO allegedly explained to

20   Plaintiffs that she, the VRO, "has no authority to do anything about the decisions that the

21   prosecutor and the court decided." (*Id.*)  Because Mr. Goggin accepted a plea deal for

22   money laundering, and Plaintiffs assert they were not victims of his money laundering

23   offense, they had no right to be heard or have restitution ordered. (*Id.* at 9.)

24        While the Court is sympathetic to Plaintiffs' frustrations, the conduct of which

25   Plaintiffs complain falls squarely within the prosecutorial discretion afforded to the

26   USAOs.  Therefore, all claims derived from the exercise of prosecutorial discretion are

27   barred under the discretionary function exception and dismissed with prejudice.

28   / / /

23-cv-652-DMS-BLM

**B. Misrepresentation by Omission**

Defendant asserts that part of Plaintiffs' allegations sound not in negligence, but rather in the tort of misrepresentation by omission for which there is no waiver of immunity. *See* 28 U.S.C. § 2680(h) (stating waiver of sovereign immunity under FTCA does not apply to claims "arising out of … misrepresentation"). By extension, the FTCA bars claims for misrepresentation by omission. *See Lawrence v. United States*, 340 F.3d 952, 958 (9th Cir. 2003) (affirming dismissal because the "misrepresentation exception shields government employees from tort liability for failure to communicate information, whether negligent or intentional."). To determine if a claim arises out of misrepresentation, it is necessary to look "beyond the labels used to determine whether a proposed claim is barred." *Thomas-Lazear v. United States*, 851 F.2d 1202, 1207 (9th Cir. 1988).

Plaintiffs allege the failure to warn or share information regarding Messrs. Cooper and Stinson, and other alleged co-conspirators, was a proximate cause of Plaintiffs' injury. In part, Plaintiffs' suit is based on the theory that government actors failed to timely advise them of the criminal activities in the underlying fraudulent schemes perpetrated by Cooper, Stinson, and others. At bottom, Plaintiffs contend government employees in the USAOs— and perhaps the SEC and FBI—did not share information with Plaintiffs, either negligently or intentionally, thereby harming them.[6] Such conduct, however, is immune from suit under the FTCA. *See Lawrence*, 940 F.3d at 958 (affirming dismissal against U.S. Marshals for failure to inform state agency of a felon's full criminal background, which allowed felon access to employment where he sexually assaulted the plaintiff); *Redmond*

---

[6] Plaintiffs named only the United States as a defendant in the present action. It is unclear precisely who Plaintiffs blame for failing to communicate information among the various prosecutors, and SEC and FBI employees. Plaintiffs, for example, allege they "filed a complaint with the FBI, Sorrento Valley department about [their] suspicion of probable public corruption with regards to the handling of Mr. Hartman's case in SC" and "have not had any transparency about that complaint and whether there is an investigation or not." (FAC at 17.) Nevertheless, for the reasons stated, any claim based on this theory of liability against any government employee referenced in the FAC must be dismissed for lack of jurisdiction.

*v. United States*, 518 F.2d 811 (7th Cir. 1975) (affirming dismissal based on SEC's failure to disclose a securities dealer's criminal history, resulting in plaintiff being defrauded). Therefore, to the extent Plaintiffs' claim is based on government actors failing to communicate information, the Court lacks jurisdiction under 28 U.S.C. § 2680(h).

## C. Futility of Leave to Amend

Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend should "be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007). However, leave to amend need not be granted where, as here, "the amendment of the complaint … constitutes an exercise in futility." *Ascon*, 866 F.2d at 1160. It is clear that Plaintiffs' allegations against Defendant all arise from protected discretionary acts of government employees during the course of the underlying investigations and prosecutions, and their alleged failure to communicate information. The Court therefore declines leave to amend as futile.

## IV.
## CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion to dismiss based on lack of subject matter jurisdiction is **GRANTED**. Plaintiffs' First Amended Complaint is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

Dated:  September 18, 2023

Hon. Dana M. Sabraw, Chief Judge
United States District Court

23-cv-652-DMS-BLM